UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTICOR, INC. and AMWAY CORP.,

        Plaintiffs,                            Hon. Paul L. Maloney

v.                                                  Case No. 1:21-cv-271

PHOEBE'S CHOICE, INC. and
PHOEBE WANG a/k/a SHEN WANG,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiffs Alticor, Inc. and Amway Corp., which are headquartered in Michigan conduct business there, have sued New York residents Phoebe's Choice, Inc. and Phoebe Wang a/k/a Shen Wang, alleging claims of trademark infringement, unfair competition, and trademark dilution under the Lanham Act; common law trademark and unfair competition; unfair competition under the Michigan Consumer Protection Act; and tortious interference with existing contracts and business relationships. Presently before me is Defendants' second Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3) for lack of personal jurisdiction and improper venue. (ECF No. 19.)

      Pursuant to 28 U.S.C. § 636(b)(1)(B), for the reasons set forth below, I recommend that the Court conclude that Defendants are subject to personal jurisdiction in Michigan and venue is proper in this district and **DENY** Defendants' motion.

                **I.**      **Background and Procedural History**

      The pertinent facts of this dispute, which need not be repeated here, are fully set forth in the Court's March 7, 2022 Opinion and Order dismissing Defendants' initial motion to dismiss

and granting Plaintiffs leave to conduct limited jurisdictional discovery. (ECF No. 18.) For context, however, Plaintiffs develop and manufacture a variety of consumer products under several different brand names (collectively Amway Products), and they allege that Defendants have been making unauthorized sales of products bearing Plaintiffs' trademarks through their highly interactive online storefront on www.amazon.com (Amazon) under the name Phoebe's Choice. (ECF No. 1 at PageID.2, 28; ECF No. 18 at PageID.259–60.)

Defendants previously filed a motion to dismiss for lack of personal jurisdiction and improper venue (ECF No. 10), which the Court denied on March 7, 2022. The Court's Opinion regarding the motion made the following determinations: (1) Defendants are not subject to general jurisdiction in Michigan (ECF No. 18 at PageID.261–62): (2) although Plaintiffs alleged that Defendants maintain an interactive website through which the alleged infringing products were sold, their allegation "upon information and belief" that "Defendants accept and fulfill orders from Michigan residents," without evidence or specific allegations establishing a basis to actually conclude that Defendants sold infringing products in Michigan, was insufficient to permit the Court to exercise personal jurisdiction over Defendants (*id.* at PageID.266–67); and (3) jurisdictional discovery was appropriate because Plaintiffs established a likelihood that Defendants had sold alleged infringing products to Michigan residents. (*Id.* at PageID.267–68.)

   A.  **Defendants' Operation of the Amazon Storefront**

Defendants submit a declaration from Phoebe Wang a/k/a Shen Wang in support of the current motion, which addresses the operation of the Phoebe's Choice Amazon storefront. According to Wang, Defendants have sold the "vast majority" of their products through a program called the "Fulfilled by Amazon" (FBA) program. (ECF No. 19-2 at PageID.277.) Orders processed through the FBA program were fulfilled from Defendants' product inventory stored in

Amazon's many fulfillment centers across the United States, and Amazon handled all packing, shipping, and the majority of the customer communications for such sales. (*Id.*) Although Wang does not expressly state so, her affidavit indicates that Phoebe's Choice also sold, packaged, and shipped products itself through Amazon Marketplace pursuant to the "Fulfilled by Merchant" (FBM) program. (*Id.*; ECF No. 20 at PageID.344.)

B.   **Plaintiffs' Jurisdictional Discovery**

On March 8, 2022, Plaintiffs sent Defendants a request for production of documents containing four requests (RFPs). The first two RFPs asked Defendants to produce copies of the following reports that they could obtain from Amazon through Defendants' "Seller Central" account: (1) "All Orders" (AO) reports; and (2) "Amazon-Fulfilled Shipments" (AFS) reports. (ECF No. 21-2 at PageID.410.) Plaintiffs provided links to webpages where Defendants could download the reports and requested that they cover the time "starting from the month that the Storefront first sold an Amway Product to the present." (*Id.*) The last two RFPs requested that Defendants produce documents sufficient to show the city and state where both Defendants and Amazon shipped Amway Products purchased from the Phoebe's Choice storefront for the foregoing period of time, to the extent such information was not included in the AO and AFS reports produced in response to the first two requests. (*Id.* at PageID.411.) Each report contains different information. (ECF No. 21-1 at PageID.393.) AFS reports provide information only about FBA orders, while AO reports provide information about products sales that were fulfilled by the Seller (Defendants) and also a portion of the Seller's sales that were fulfilled by Amazon. (*Id.*) Plaintiffs thus requested both reports to obtain a full picture of Defendants' sales of Amway Products, particularly to Michigan residents.

Defendants did not provide all of the requested documents. Their production was limited to information from the AO reports—showing sales by Defendants and some sales by Amazon—but even that information was further limited to sales through April 2, 2021. (*Id.* at PageID.397–98.) In spite of Plaintiffs' counsel's numerous requests to Defendants' counsel, Defendants never produced the AFS reports or post-April 21, 2021 sales information. (*Id.* at PageID.398–400.) Nonetheless, using the materials that Defendants did produce in Excel spreadsheets and TXT files, including information from the AO reports, Plaintiffs have produced a spreadsheet purportedly showing each sale of an Amway Product by Defendants into Michigan. (*Id.* at PageID.400.) The spreadsheet (the Michigan Sales Spreadsheet) is attached to Plaintiffs' response as Exhibit L to the Sherman Declaration. (ECF No. 21-13.) The Michigan Sales Spreadsheet lists for each transaction, from left to right: (1) the day and time; (2) the unique "Order ID" that Amazon assigned; (3) the name of the product as displayed on Defendants' storefront; (4) the quantity of products sold; (5) the fulfilling party (Amazon or Defendants (Seller)); and (6) the city, state, and zip code where the products were shipped.[1] (ECF No. 21-1 at PageID.400; ECF No. 21-13.) While Plaintiffs believe that, in light of Defendants' deficient document production, their actual Michigan sales likely far exceed the amounts shown in the Michigan Sales Spreadsheet, they assert that the spreadsheet still shows that Defendants sold 302 Amway products to Michigan consumers through 262 separate transactions between May 11, 2020, and April 1, 2021, and that of those 262 transactions, 223 (258 products) were shipped by Defendants and the remaining 39 (44 products) were shipped by Amazon. (ECF No. 21 at PageID.372.)

---

[1] The last column on the right appears to list the total purchase price of the transaction. (ECF No. 21-133 at PageID.496.)

## II. Discussion

### A.   Personal Jurisdiction

A court may exercise personal jurisdiction over a defendant only if the jurisdiction comports with both the state's long-arm statute and constitutional due process.[2] *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008). To satisfy the requirements of federal due process, a defendant not present within the forum state must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In deciding whether the exercise of personal jurisdiction comports with due process, the Sixth Circuit applies the following three-part test, often referred to as the *Mohasco* test (*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968)): (1) the defendant must purposefully avail itself of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (citation omitted).

The plaintiff bears the burden of demonstrating that a court has personal jurisdiction. *International Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). The plaintiff must establish the purposeful-availment and arising-from elements of the due process inquiry. *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). If the

---

[2] The Court previously recognized that, because the reach of Michigan's long-arm statute is coextensive with the limits of federal due process, a court need resolve only the single question of whether the exercise of jurisdiction over an out-of-state resident comports with due process. (ECF No. 18 at PageID.262.)

plaintiff establishes the first two factors, the burden shifts to the defendant to show that exercise of personal jurisdiction by this Court would be unreasonable. *Id.* Because there is no indication from the parties that the jurisdictional facts are not in dispute, Plaintiffs need only make a prima facie showing of personal jurisdiction. *Id.*

### 1. Purposeful Availment

The central inquiry here relates to the first factor of the *Mohasco* test—whether Defendants purposefully availed themselves of the privilege of acting in Michigan. Purposeful availment ensures that the defendant has purposefully established a connection with the forum "such that [it] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It "'is something akin to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (citation omitted). Requiring an out-of-state defendant to avail itself purposefully of the privilege of acting in the forum state protects the defendant from being subjected to suit based solely on "'random,' 'fortuitous,' or 'attenuated' contacts, or [because] of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

The present issue can be further distilled as: whether Defendants' sales of infringing products to consumers in Michigan through an interactive website available to Michigan residents satisfies the due process requirement that they "purposely avail[ed] [themselves] of the privilege of conducting activities within [Michigan], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Plaintiffs point to a number of cases supporting this

contention. Defendants, on the other hand, point to cases from various circuits which, they assert, require that Defendants must have had a particular focus on, or targeting of, Michigan. As discussed below, I find Plaintiffs' cases persuasive and conclude that Defendants' sales activities in Michigan more than adequately demonstrate that they purposefully directed their activities at Michigan residents.

As an initial matter, for the sake of accuracy, I have closely reviewed the Michigan Sales Spreadsheet and find that it overstates the number of transactions and sales of Amway Products to Michigan residents during the specified period. The numbers, by my count, are 203 transactions covering 236 products. This is because a number of transactions included in the spreadsheet—59 (a few of which involved multiple products)—were not to Michigan residents. Beginning on page 8 and continuing through page 14, the spreadsheet lists approximately 59 transactions to cities such as Los Angeles, California; Newtown, Pennsylvania; Port St. Lucie, Florida; Roswell, Georgia; and Watertown, South Dakota. (ECF No. 21-13 at PageID.498–504.) While the spreadsheet lists Michigan as the state connected to these cities for these transactions, the zip codes suggest otherwise. Nonetheless, the revised numbers do not alter the analysis.

Courts in Michigan and in other states, particularly in trademark and patent infringement cases, have held that a defendant's sales of infringing products into the forum can demonstrate that the defendant's efforts to target the forum were purposeful. *See Mr. Vapor Wholesale, LLC v. H.S. Wholesale Ltd.*, No. 20-10416, 2020 WL 4700825, at *4 (E.D. Mich. Aug. 13, 2020) (noting that "[t]he defendant's conduct of taking orders online and knowingly selling products directly to Michigan customers through its website clearly constitutes 'an action of the defendant purposefully directed toward the forum'" (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (198[7]) (opinion of O'Connor, J.))); *Spin Master Ltd. v. 158*, 463 F.

7

Supp. 3d 348, 363 (S.D.N.Y. 2020) ("[A] defendant who uses [a] third-party website 'as a means for establishing regular business with a remote forum' and conducts business within that forum may be found to purposefully avail itself of that forum." (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458, 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012))); *Otter Prods., LLC v. Phone Rehab, LLC*, No. 19-cv-206, 2019 WL 4736462, at * 4 (D. Colo. Sept. 27, 2019), *report and recommendation adopted*, 2019 WL 6888276 (D. Colo. Dec. 18, 2019) (the defendants' sale and shipment of 341 alleged infringing products through 267 transactions into Colorado over a one-year period demonstrated the defendants' purposeful direction of activity at the forum); *Ford Global Techs., LLC v. New World Int'l Inc.*, No. 2:15-cv-10394, 2016 WL 3349041, at *3–4 (E.D. Mich. June 16, 2016) (rejecting the defendant's assertion that it did not specifically target Michigan because the "the fact that Auto Lighthouse sold parts nationwide undoubtedly increased its online presence, thereby better enabling it to sell to Michigan residents"). In a similar case also under the Lanham Act involving sales through a website, the Seventh Circuit observed that the defendant's Illinois sales provided the requisite jurisdictional link:

> Significant caution is certainly appropriate when assessing a defendant's online contacts with a forum "to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." *Hemi*, 622 F.3d at 760. Here, however, Revolution's 767 sales of Diesel Test to Illinois residents provides solid evidence that Revolution has "purposely exploited the Illinois market." *be2*, 642 F.3d at 558 (collecting cases). These sales certainly distinguish Revolution from "the defendant [that] merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state." *Id.* at 559 (collecting cases).

*Curry v. Revolution Labs., LLC*, 949 F.3d 385, 400 (7th Cir. 2020).

The cases Defendants cite are not to the contrary, are distinguishable on their facts, and thus are not persuasive authority in the circumstances presented here. For example, in *Fidrych v. Marriott International, Inc.*, 952 F.3d 124 (4th Cir. 2020), the plaintiff, a South Carolina resident, alleged a personal injury claim arising out of an incident that occurred at a hotel in Milan, Italy.

8

Although the defendant had a website that was accessible to South Carolina residents and the hotel reservations were made through the website, the court found the website immaterial as a basis for a connection to South Carolina because "none of the wrongs Marriott is alleged to have committed took place in South Carolina." *Id.* at 140. Similarly, in *XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020), the defendant was not accused of selling and shipping alleged infringing products into the forum state. Rather, the case involved dissemination of mass marketing spam emails by third parties. The court found the website provided no basis for specific personal jurisdiction because the plaintiff presented no evidence that the defendant knew that any email recipient resided in Utah. *Id.* at 845–47 ("Purposeful direction cannot be satisfied if the website host, web poster, or email sender simply wants as many responses as possible but is indifferent to the physical location of the responder.").

Here, Plaintiffs have shown through the limited discovery they obtained from Defendants that Defendants sold at least 236 infringing products to Michigan residents in 203 transactions through April 1, 2021. This level of sales provides ample basis to show that Defendants purposely directed their activities toward Michigan. *See Otter Prods.*, 2019 WL 4736462, at *4 (sales of 341 infringing products through 267 transactions during a one-year period deemed adequate to establish specific jurisdiction); *Leach v. Pharmedoc Inc.*, No. CIV-16-1034, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017) (sales of at least four infringing pillows through the defendant's website to Oklahoma residents sufficient to show that the defendant purposefully directed its activities at the forum); *Best Chair Inc. v. Factory Direct Wholesale, LLC*, 121 F. Supp. 3d 828, 837–38 (S.D. Ind. 2015) (*de minimis* sales of infringing product into the forum enough to support personal jurisdiction because the sales resulted in an intentional tort in the forum). Moreover, "[a] single sale may be sufficient provided that the defendant's activities were purposeful and there was

a substantial relationship between the transaction and the claim asserted." *WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706, 2019 WL 1375470, at *3 (S.D.N.Y. Mar. 27, 2019) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010), and *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)); *see also Mr. Vapor Wholesale*, 2020 WL 4700825, at *4 (a single contact with the forum state may suffice "'if it is directly and substantially related to the plaintiff's [infringement] claim'" (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998))). In addition, as Plaintiffs point out, given Defendants' failure to produce the AFS reports, the number of sales into Michigan is likely much higher, particularly because Wang acknowledged in her affidavit that the "vast majority" of Phoebe's Choice sales was through the FBA program. (ECF No. 21 at PageID.378.) This evidence adequately demonstrates that Defendants directed their activity through their Amazon storefront to Michigan residents. In other words, Plaintiffs have shown that Defendants' contacts with Michigan were more than "'random,' 'fortuitous,' or 'attenuated.'" *Burger King*, 471 U.S. at 475 (citations omitted). Finally, Defendants' transaction of business through a third-party website to market, sell, and ship products has no bearing on the minimum-contacts analysis. *See Standard Process, Inc. v. KDealz Ltd. Co.*, No. 17-cv-909, 2018 WL 3059673, at *3 (W.D. Wis. June 20, 2018) ("The fact that [defendant] conducts that business through Amazon doesn't shield it from personal jurisdiction any more than shipping products via FedEx would."); *Ford Global Techs.*, 2016 WL 3349041, at *4 ("While Auto Lighthouse does not operate or control ebay.com or amazon.com, it does control what products it sells and offers for sale on those websites. And, more importantly, Auto Lighthouse controlled which forums it would sell to.").

Defendants contend that the transaction information garnered from Defendants' Seller Central account shows a "very passive level of consumer interactivity with Michigan residents,"

because it includes only "the city, State, and zip code" for each transaction and does not even include the customer's street address. (ECF No. 20 at PageID.363–64.) Regardless, even though the information does not contain the minutiae of the transactions, it still establishes that Defendants sold at least 236 Amway Products (and likely more) to customers in Michigan in at least 203 transactions. This is the important information for purposes of personal jurisdiction, and it demonstrates not only interactivity, but also a sufficient connection to Michigan justifying the exercise of personal jurisdiction. Defendants' additional contention that this is simply a "stream of commerce" case—where the Amway Products ended up in Michigan only because Defendants placed them in the stream of commerce, and they ended up in Michigan—also lacks merit. As set forth above, Defendants did not merely place the infringing products into the stream of commerce, but instead directly sold them to Michigan residents.[3]

### 2. Forum-Related Activities

The second factor is that "the cause of action must arise from the defendant's activities [in the forum]." *Air Prods. & Controls, Inc.*, 503 F.3d at 550. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).

This test is easily met in this case. "Injury from trademark infringement occurs in the state where the trademark owner resides." *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 815 (E.D. Mich. 2000). Plaintiffs are Michigan citizens and allege that Defendants sold products

---

[3] The fact that Defendants did not specifically advertise or market the infringing products to Michigan residents does not defeat personal jurisdiction based on Defendants' sales activity, as "[t]here is no per se requirement that the defendant especially target the forum in its business activity." *Curry*, 949 F.3d at 399.

to Michigan customers that infringed Plaintiffs' trademarks. Thus, both the cause of action and associated injury occurred in Michigan.

### 3. Reasonableness

The Sixth Circuit has said that, if the first two factors are met, "then an inference arises that th[e] third factor is also present." *CompuServe, Inc.*, 89 F.3d at 1268. Nonetheless, a court must consider several factors, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988) (citing *Asahi Metal Indus. Co.*, 480 U.S. at 113). The balance of these factors indicates that the exercise of jurisdiction over Defendants is reasonable. There is no indication that defending this case in Michigan would be unreasonably burdensome for Defendants, and Michigan has a legitimate interest in protecting the interests of its businesses. Similarly, Plaintiffs have an interest in obtaining relief in Michigan.

Accordingly, I recommend that the Court find that Plaintiffs have made a prima facie showing of personal jurisdiction over Defendants.

### B. Venue

Defendants also move for dismissal on the basis that venue is improper in this district. Pursuant to the general venue statute, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In determining venue in a trademark infringement case, "the proper inquiry is where the infringing activity occurred." *Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc.*, 769 F. Supp. 259, 261 (M.D. Tenn. 1991) (citing *Tefal, S.A. v. Prods. Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976)). "[C]ourts have found venue proper under § 1391(b)(2) in districts where confusion

about the origin of the product is likely to occur because this constitutes the 'events or omissions giving rise to the claim.'" *IA, Inc. v. Thermacell Tech., Inc.*, 983 F. Supp. 697, 700 (E.D. Mich. 1997) (quoting 28 U.S.C. § 1931(b)(2) and citing cases). The relevant question is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). In assessing the likelihood of confusion or deception in a district, a court must consider whether the defendant's marketing efforts targeted the district and whether sales occurred there. *Sechel Holdings, Inc. v. Clapp*, No. 3:12-CV-108, 2012 WL 3150087, at *3 (W.D. Ky. Aug. 2, 2012) (citing *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)). In addition, in Lanham Act cases based on sales made through highly interactive websites, courts "require only a modest amount of sales or shipments to a district for a likelihood of confusion to be established." *Id.* (collecting cases).

While the sales of alleged infringing products in this district are only a percentage of the 203 identified transactions with consumers in Michigan, those sales are not insignificant. In addition, as noted above, Defendants' Michigan sales are likely substantially higher than what is shown on the Michigan Sales Spreadsheet. In light of these facts, a substantial likelihood exists that consumers who purchased Amway Products through Defendants' Amazon storefront in this district were confused as to the origin of those products. Accordingly, I conclude that venue in this district is proper not only because there is a substantial connection between Plaintiffs' claims and the events in this district, but because the injury occurred here as well.

### III. Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendants' motion to dismiss. (ECF No. 19.)

Dated: September 30, 2022           /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).